O

# United States District Court
# Central District of California

| | |
|---|---|
| JOHNATHON ERVIN,<br><br>             Plaintiff,<br><br>     v.<br><br>AMAZON.COM SERVICES, LLC et al.,<br><br>             Defendants. | Case № 2:24-cv-10311-ODW (KSx)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO COMPEL ARBITRATION [23]** |

## I.   INTRODUCTION

Defendants Amazon Services, LLC, Amazon.com, Inc., Amazon Logistics, Inc., Golden State FC, LLC, Amazon Fulfillment Services, Inc., and Kim Herzog (collectively, "Amazon") move to compel Plaintiff Johnathon Ervin to arbitrate his claims against them and stay this action.  (Mot. Compel Arb. ("Mot." or "Motion"), ECF No. 23.)  For the following reasons, the Court **GRANTS** Amazon's Motion.[1]

## II.   BACKGROUND

On August 22, 2019, Ervin's business—Battle Tested Strategies, LLC ("BTS")—executed a Delivery Service Partner ("DSP") Agreement with Amazon that governed "the transportation, delivery, and related services . . . performed by [BTS]."

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

(Mot. 1, 3; Decl. Micah McCabe ISO Mot. ("McCabe Decl.") ¶¶ 6, 8, Ex. A ("DSP Agreement"), ECF Nos. 23-2 to 23-3.) Ervin signed the agreement on behalf of BTS. (McCabe Decl. ¶ 7.) Thereafter, Ervin managed the drivers that BTS employed who delivered Amazon's products. (Notice Removal Ex. A ("Compl.") ¶ 13a, ECF No. 1-1; McCabe Decl. ¶ 9.) Ervin contends that he was Amazon's employee and that Amazon improperly classified him as an independent contractor. (Compl. ¶ 13a; *see* Opp'n 8, ECF No. 28 ("[Ervin] was hired to manage [BTS drivers] by [Amazon].").)

Relevant here, the DSP Agreement between Amazon and BTS contains an arbitration provision that states as follows:

> This Agreement is governed by the United States Federal Arbitration Act, applicable United States federal law, and Washington State law . . . . ANY DISPUTE ARISING OUT OF THIS AGREEMENT WILL BE RESOLVED BY BINDING ARBITRATION, RATHER THAN IN COURT. . . . The arbitration will be conducted by the American Arbitration Association (the "AAA") under its rules, including the AAA's Commercial Arbitration Rules. The AAA's rules are available at www.adr.org or by calling 1-800-778-7879.

(DSP Agreement ¶ 13.) The parties revised the DSP Agreement two times, but never altered the arbitration provision. (McCabe Decl. ¶ 8; *see also id.* Ex. 3 ("Am. DSP Agreement"), ECF No. 23-4.)

On September 11, 2019, Ervin and BTS entered into a "Mutual Agreement to Individually Arbitrate Disputes" (the "DA Agreement") with each other. (Decl. Alexis Cantwell-Badyna ISO Mot. ("Cantwell-Badyna Decl.") ¶¶ 5, 7, Ex. A ("DA Agreement"), ECF Nos. 23-6 to 23-7.)

On April 14, 2023, more than three-and-a-half years after executing the DSP Agreement, Amazon notified Ervin that it was terminating the DSP Agreement. (*See* Compl. ¶ 17a; McCabe Decl. ¶ 10, Ex. C ("Termination Notice"), ECF No. 23-5.)

On October 21, 2024, following the termination, Ervin brought this action against Amazon in Los Angeles County Superior Court asserting claims for violations of California's Fair Employment and Housing Act ("FEHA"), whistleblower retaliation,

wrongful termination in violation of public policy, and intentional infliction of emotional distress. (Compl. ¶¶ 23–70.) On November 27, 2024, Amazon removed the action to this Court based on diversity jurisdiction. (Notice Removal, ECF No. 1.)

Amazon now moves to compel arbitration and stay this action on the grounds that Ervin agreed to arbitrate his claims when he signed the DSP Agreement with Amazon in his capacity as owner and agent of BTS. (Mot.; Mem. P. & A. ISO Mot. ("Mem.") 6–12, ECF No. 23-1.) Amazon also argues that it may compel arbitration under the DA Agreement, as it is a third-party beneficiary of that agreement. (*Id*. at 12–20.) The Motion is fully briefed. (*See* Opp'n; Reply, ECF No. 29.)

### III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") is meant to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (alteration in original). Section 2 of the FAA creates a policy favoring enforcement, stating that arbitration clauses in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (quoting 9 U.S.C. § 2). Under the FAA, a party to such an agreement may petition an appropriate federal district court to compel arbitration. 9 U.S.C. § 4.

The FAA governs a contract dispute relating to an arbitration provision if the contract affects interstate commerce. *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273–74 (1995). When it applies, the FAA restricts a court's arbitration inquiry to two threshold questions: (1) whether there was an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Cox*, 533 F.3d at 1119. A delegation provision further limits a court's review by assigning these gateway questions to an arbitrator. *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1009 (9th Cir. 2023). If an arbitration agreement contains a delegation provision, a party opposing arbitration must specifically challenge the delegation provision. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010). If the party fails to do so, a court

must treat the provision as valid, order arbitration and leave "any challenge to the validity of the Agreement as a whole for the arbitrator." *Id.*

### IV. DISCUSSION[2]

Amazon seeks to compel Ervin to resolve his claims through arbitration based on the DSP Agreement and the DA Agreement. (*See* Mem.)  Amazon also contends that because the DSP Agreement and the DA Agreement each invoke and incorporate the AAA and its rules, the agreements delegate any arbitrability dispute to an arbitrator. (*Id.* at 5.)

Ervin argues that Amazon cannot compel arbitration under the FAA because Ervin falls within the FAA's transportation worker exemption pursuant to 9 U.S.C. § 1. (*Id.* at 5–7.)  Ervin also contends that, under California law, the parties' agreement to arbitrate is unenforceable because Amazon should have classified Ervin as an employee and not as an independent contractor. (*Id.* at 7–11.)  In so arguing, Ervin attacks the DSP Agreement's arbitration clause as substantively unconscionable, arguing that it would diminish his statutory rights because it contains an overly-burdensome forum selection and choice-of-law provision. (*Id.* at 9–10.)[3]

### A. Whether Ervin is Bound by the DSP Agreement

Ervin brings this action against Amazon in his individual capacity and not on behalf of BTS. (*See generally* Compl.)  Even though Ervin did not sign an arbitration agreement with Amazon in his individual capacity, Amazon argues that "principles of agency and estoppel require enforcement of the DSP Agreement" against Ervin, who signed the agreement on behalf of BTS, as its owner. (Mem. 8–9; *see* DSP Agreement).

---

[2] Amazon asks the Court to take judicial notice of orders from other courts. (Req. Judicial Notice, ECF No. 30.)  As these are judicial records from other cases, the Court **GRANTS** Amazon's request. Fed. R. Evid. 201; *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003) ("[C]ourt orders and filings are the type of documents that are properly noticed under [Fed. R. Evid. 201(b)].").

[3] Ervin also argues that, in the DA Agreement, he and BTS did not unmistakably delegate the issue of arbitrability to an arbitrator. (Opp'n 11–13.)  However, the Court need not reach this argument—or the enforceability of the DA Agreement generally—as it finds that the DSP Agreement compels arbitration here.

A party may enforce an arbitration agreement against a nonsignatory through principles of agency and equitable estoppel. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (discussing principle of equitable estoppel); *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013) (explaining that nonsignatory of agreement may be required to arbitrate "if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory"). Ervin does not dispute, and indeed concedes, that he "reviewed and was bound by the DSP Agreement." (Decl. Jonathon Ervin ISO Opp'n ("Ervin Decl.") ¶ 6, ECF No. 28-1; *see also* Reply 2 ("[Ervin] acknowledges that the DSP Agreement is binding on him.").) Accordingly, the Court accepts Ervin's declaration that he is bound by the DSP Agreement and finds that Ervin is bound by the agreement's arbitration clause.[4]

### B. Section 1 of the FAA—Transportation Worker Exemption

As Ervin is bound by the agreement to arbitrate, the Court turns to Ervin's argument that he is exempt from mandatory arbitration as a transportation worker under section 1 of the FAA. (Opp'n 5–9.) Specifically, Ervin argues that because he personally effectuated the movement of Amazon's goods in interstate commerce and brings this action individually under California labor laws, the FAA's transportation worker exemption applies to him. (*Id.* at 6, 8.) Amazon argues that Ervin is not subject to section 1 of the FAA because the DSP Agreement between Amazon and BTS is a commercial contract between business entities and not a contract for employment. (Reply 2–3.)

---

[4] Even had Ervin not explicitly conceded that he is bound by the DSP Agreement, he makes no effort to dispute Amazon's arguments that he is bound under agency and estoppel principles. (*See* Opp'n.) Thus, any argument that Ervin, as BTS's owner, is not bound by the DSP Agreement's arbitration clause is waived. *See John-Charles v. California*, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011) (deeming issue waived where the party "failed to develop any argument"); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) ("[I]n most circumstances, failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue.").

The Supreme Court has held that "a court should decide for itself whether § 1's 'contracts of employment' exclusion applies before ordering arbitration." *New Prime Inc. v. Oliveira*, 586 U.S. 105, 111 (2019). Section 1 of the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. The phrase "contracts of employment" specifically captures "any contract for the performance of *work* by *workers*." *New Prime*, 586 U.S. at 116. It therefore "does not extend to business entities or to commercial contracts." *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1201 (9th Cir. 2024). The Supreme Court has ruled that section 1's exclusion of workers "engaged in commerce" must "be afforded a narrow construction." *Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 106 (2001). Also, because Ervin is the party opposing arbitration, he bears the burden of establishing that the exemption applies. *Rogers v. Royal Caribbean Cruise Line*, 547 F.3d 1148, 1151 (9th Cir. 2008).

Ervin argues that the exemption applies to him because the Ninth Circuit has held that "transportation workers who are engaged in the movement of goods in interstate commerce" are exempted, "even if they do not cross state lines." (Opp'n 6 (quoting *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020)).) Amazon replies that the Ninth Circuit's recent decision in *Fli-Lo Falcon*, which distinguished *Rittmann*, applies to this case. (Reply 3.)

In *Rittmann*, the Ninth Circuit considered a program called "AmFlex." 971 F.3d at 907. Unlike with the DSP Agreement, under AmFlex, "Amazon contract[ed] with *individuals*." *Id.* (emphasis added). In *Rittmann*, the court held that the individual AmFlex drivers fell within the FAA's transportation worker exemption because they were "engaged in the movement of goods in interstate commerce." 971 F.3d at 915–16. Even though the AmFlex drivers did not regularly cross state lines, the court reached this finding because the "out-of-state nature of [their] goods" remained in the flow of interstate commerce until final delivery. *Id.* at 917.

Four years later, in *Fli-Lo Falcon*, the Ninth Circuit considered a DSP agreement practically identical to the one at issue here, between Amazon and another corporation. 97 F.4th at 1192. There, the Ninth Circuit concluded that the DSP agreement was a commercial contract, and distinguished *Rittmann* as involving agreements between Amazon and individual delivery drivers. *Id.* at 1196–97. It noted that the *Rittmann* court said "nothing about whether a business entity can be a 'worker' subject to a 'contract of employment' under the transportation worker exemption." *Id.* The court concluded that section 1 "does not extend to business entities or to commercial contracts" like the DSP agreement, emphasizing that the transportation worker exemption is limited to "contracts of employment . . . for the performance of *work* by *workers*." *Id.* at 1197.

Ervin tries to distinguish this case from *Fli-Lo Falcon*, which involved *the same* business-to-business commercial contract as here, and paint it as more like *Rittmann*, in which Amazon contracted directly with individual drivers who were transportation workers subject to section 1 of the FAA. (Opp'n 8–9.)

Ervin first argues he is unlike the plaintiffs in *Fli-Lo Falcon*, who were sophisticated business parties, and more like the individual delivery drivers in *Rittmann*. (*Id.*) However, this argument is contradicted by the fact that, like the plaintiffs in *Fli-Lo Falcon*, the entire basis for Ervin's relationship with Amazon was his business's commercial contract. (*See* McCabe Decl. ¶¶ 5–7); *see also Fli-Lo Falcon*, 97 F.4th at 1198 ("[T]he transportation worker exemption does not extend to business entities like [Delivery Service Partners]."). That Ervin brings this action as an individual instead of on behalf of his business, (*see* Compl.), does not alter this analysis. The DSP Agreement—executed between Amazon and BTS—is a commercial contract and not a "contract of employment . . . for the performance of *work* by *workers*," subject to the FAA's section 1 exemption. *Fli-Lo Falcon*, 97 F.4th at 1197 (distinguishing *Rittmann* because there, "the question presented was whether contracts between *individual*

*drivers*, who contracted directly with Amazon to provide local package delivery . . . were exempted from the FAA by the transportation worker exemption").

Therefore, Amazon is correct that the instant case is more analogous to *Fli-Lo Falcon*, where the Ninth Circuit held explicitly that the DSP agreement was a commercial contract "not subject to the transportation worker exemption" because the parties that executed it were "business entities and not natural persons." *Id.* at 1197–98. To that point, the DSP Agreement does not define any duties or obligations for Ervin individually, as one would expect to find if it were an employment contract. (*See* DSP Agreement.) Instead, the DSP Agreement delineates "the transportation, delivery, and related services . . . performed by [BTS]," (DSP Agreement 1), as would "a commercial contract between two business entities," *Fli-Lo Falcon*, 97 F.4th at 1197. Accordingly, the Court concludes that the DSP Agreement in this case is like the agreement in *Fli-Lo Falcon* and therefore falls outside the FAA's section 1 exemption.

As the nature of the claims in *Fli-Lo Falcon* were not relevant to the Ninth Circuit's holding, *see id.* at 1201, the Court rejects Ervin's argument that *Fli-Lo Falcon* is distinguishable because he brought this action under California labor and employment statutes and not contract law, (Opp'n 8–9). Thus, the Court finds that section 1 of the FAA does not exempt Ervin from arbitration.

### C.   Remaining Issues

Ervin contends that this action is not arbitrable because (1) the DSP Agreement's forum selection clause renders it substantively unconscionable; (2) the choice-of-law clause unlawfully diminishes his statutory rights by imposing Washington state law; and (3) California Labor Code section 925 bars conditioning employment on an agreement that designates a non-California forum or governing law. (Opp'n 9–11.) However, because the Court finds that the parties delegated all questions of arbitrability to an arbitrator through the DSP Agreement, it does not reach the merits of these issues.

The "gateway issues can be expressly delegated to the arbitrator where 'the parties clearly and unmistakably provide otherwise.'" *Brennan v. Opus Bank*, 796 F.3d

1125, 1130 (9th Cir. 2015) (emphasis omitted) (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986)).  Relevant here, AAA's commercial arbitration rules expressly provide that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the . . . validity of the arbitration agreement."  AAA, Commercial Arbitration Rules and Mediation Procedures R-7(a) (2022).  Consequently, "[v]irtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties have agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) (collecting cases); *see, e.g.*, *Fli-Lo Falcon*, 97 F.4th at 1201 ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." (quoting *Brennan*, 706 F.3d at 1130)).  Therefore, Amazon is correct that the DSP Agreement's arbitration provision "clearly and unmistakenly delegates questions of arbitrability to the arbitrator" by incorporating AAA arbitration rules.  (Mem. 5; DSP Agreement ¶ 13 ("The arbitration will be conducted by the American Arbitration Association (the 'AAA') under its rules, including the AAA's Commercial Arbitration Rules.").)

Where, as here, the parties have delegated arbitrability, "the only remaining question is whether the particular agreement to *delegate* arbitrability—the [d]elegation [p]rovision—is itself unconscionable." *Fli-Lo Falcon*, 97 F.4th at 1199 (alterations in original).  Furthermore, "to sufficiently challenge a delegation provision, the party resisting arbitration must specifically reference the delegation provision and make arguments challenging it." *Bielski*, 87 F.4th at 1011.

1.  *Unconscionability*

Ervin appears to contend, through the case law he cites, that the DSP Agreement's forum selection clause is substantively unconscionable.  (*See* Opp'n 9 ("[T]he forum selection provision renders the agreement to arbitrate substantively

9

unconscionable." (quoting *Magno v. The Coll. Network, Inc.*, 1 Cal. App. 5th 277 (2016)).)

Because "an arbitration provision is severable from the remainder of the contract" as a matter of federal law, a party must challenge "the precise agreement to arbitrate at issue" under section 2 of the FAA. *Rent-A-Center*, 561 U.S. at 71; 9 U.S.C. § 2 ("[A]n agreement in writing to submit to arbitration . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for [its] revocation."). Similarly, the party opposing delegation must "specifically reference the delegation provision and make arguments challenging it." *Bielski*, 87 F.4th at 1011.

Critically, Ervin makes no mention of the DSP Agreement's delegation provision in his opposition brief. (*See generally* Opp'n.) Ervin argues only that the *DA Agreement* between himself and BTS does not clearly and unmistakably delegate questions of arbitrability to an arbitrator. (*Id*. at 11–12.) Similarly, Ervin's challenge to the DSP Agreement's forum selection and choice-of-law clauses as unconscionable does not address the DSP Agreement's delegation provision directly. Indeed, because Ervin fails to make any discernible argument as to why the delegation provision itself is unconscionable, the Court need not consider unconscionability challenge. *See Rent-A-Center*, 561 U.S. at 73 (holding there was no need to consider unconscionability claim where party asserting an arbitration agreement was unconscionable failed to challenge the governing delegation provision). The Court must therefore leave any determination as to the alleged unconscionability of the DSP Agreement to an arbitrator.

*2. Diminishment of Statutory Rights*

Next, Ervin argues that his claims are based on California labor laws and "employers may not use a forum selection and choice-of-law clause to circumvent employees' unwaivable statutory rights." (Opp'n 10 (citing *Verdugo v. Alliantgroup, L.P.*, 237 Cal. App. 4th 141 (2015), *as modified on denial of reh'g* (June 25, 2015)).) However, this issue also falls within the scope of the delegation provision. *See Ratajesak v. New Prime, Inc.*, No. 2:18-cv-09396-DOC (AGRx), 2019 WL 1771659,

at *5 (C.D. Cal. Mar. 20, 2019) (declining to address the arbitrability of a California unpaid wages claim after concluding that the parties delegated questions of arbitrability to an arbitrator). Ervin's reliance on *Verdugo* is misplaced, as that case addressed a forum selection and choice-of-law clause in the absence of a delegation provision. *See Verdugo*, 237 Cal. App. 4th at 145–46. Even under California law, a clear and unmistakable delegation provision encompasses challenges related to whether an agreement's language has any effect on a party's statutory rights. *See Zhang v. Superior Ct. of Los Angeles Cnty.*, 85 Cal. App. 5th 167, 184 (2022) ("The arbitrator will decide, as agreed, all issues of arbitrability, including whether petitioner is an employee who is entitled to invoke the[ir] protections [under California Law]."). Accordingly, even if the Court "believes that the underlying claims are plainly non-arbitrable, it must delegate that question to the arbitrator." *Ratajesak*, 2019 WL 1771659, at *5.

### 3. *California Labor Code Section 925*

Similarly, the Court does not reach Ervin's challenge that the DSP Agreement is unenforceable under California Labor Code section 925. (*See* Opp'n 10–11.) That section prohibits employers from "requir[ing] an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would . . . [r]equire the employee to adjudicate outside of California a claim arising in California." Cal. Lab. Code § 925(a). California courts and courts in this District have found that "the applicability of Labor Code section 925 is a question of arbitrability that may be delegated to the arbitrator." *Zhang*, 85 Cal. App. 5th at 178 (collecting cases); *see Ratajesak*, 2019 WL 1771659, at *6. Thus, Ervin's challenge based on section 925 is for the arbitrator to resolve.[5]

---

[5] Ervin appears to argue that the DSP Agreement is unenforceable under California Labor Code section 432.6, (Opp'n 11), which prohibits employers from "requir[ing] any applicant for employment or any employee to waive any right, forum, or procedure for a violation of any provision of [FEHA or the Labor Code] . . . including the right to file and pursue a civil action" in court. Cal. Lab. Code § 432.6(a). The Ninth Circuit has held that "the FAA preempts [section 432.6] as a whole to the extent it applies to arbitration agreements." *Chamber of Com. v. Bonta*, 62 F.4th 473, 490 (9th Cir. 2023). Therefore, to the extent the DSP Agreement does not delegate this issue to the arbitrator, Ervin's challenge fails as the FAA preempts section 432.6.

In sum, when parties to an arbitration agreement contractually delegate questions of arbitrability to an arbitrator, "a court may not override the contract . . . [and] possesses no power to decide the arbitrability issue." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019). As Ervin is bound by the DSP Agreement's arbitration provision and his challenges to arbitration fail, the Court must compel arbitration of his claims against Amazon.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Amazon's Motion to Compel Arbitration and Stay Litigation. (ECF No. 23.) The parties are hereby **COMPELLED** to arbitrate the claims Ervin asserts in his Complaint. This action is **STAYED** pending completion of Ervin's arbitration with Amazon.

Starting on **September 15, 2025**, and by the fifteenth of the month every three (3) months thereafter, the parties shall file a Joint Status Report informing the Court of the status of arbitration. Furthermore, the parties shall file a Joint Status Report no later than ten (10) days following the conclusion of arbitration.

**IT IS SO ORDERED.**

June 5, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**